J-A24018-25

2025 PA Super 274

| ERICK F. ESQUIVEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EFRAIN SANTIAGO MARTINEZ | : | |
| | : | |
| Appellant | : | No. 675 MDA 2025 |

Appeal from the Order Entered April 23, 2025
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2023-01553

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

OPINION BY DUBOW, J.:                        **FILED DECEMBER 09, 2025**

Appellant, Efrain Santiago Martinez, appeals from the April 23, 2025 order that the trial court entered in the Franklin County Court of Common Pleas.  In this case, a former intimate partner of a mother wants to establish, by genetic testing, that he is the biological parent of a child.  In particular, Appellee, Erick F. Esquivel (the "Putative Biological Father"), filed a complaint requesting genetic testing, and the trial court granted it.  Appellant, who has cared for the child since her birth (the "Custodial Caretaker"[1]), has appealed.[2]  After careful review, we affirm the order granting the Putative Biological Father's request for genetic testing.

_____

[1] We use this term only for descriptive purposes and emphasize that it does not vest Appellant with any legal custodial rights.

[2] An order requiring genetic testing is entitled to interlocutory review. ***Jones v. Trojack***, 634 A.2d 201, 204 (Pa. 1993).

The relevant facts and procedural history are as follows. Three-year-old V.A.S.F. ("Child") was born to C.K.F.G. ("Mother") in March 2022.[3] Custodial Caretaker signed an acknowledgment of paternity and is listed as the father on Child's birth certificate. On April 15, 2023, Mother died in a car accident.

On May 15, 2023, when Child was thirteen months old and a month after Mother's death, Putative Biological Father filed a complaint seeking genetic testing in order to determine whether he is the biological parent of Child. On July 21, 2023, Custodial Caretaker filed a responsive pleading asserting that the doctrine of paternity by estoppel barred Putative Biological Father from asserting his paternity.

The trial court conducted several evidentiary hearings. Custodial Caretaker testified to his bond and relationship with Child. Custodial Caretaker also attempted to testify more specifically about his financial support of Mother and Child and Child's condition after the car accident. After determining that this testimony would not be relevant for a request for genetic

_____

[3] Prior to Child's conception, Mother's husband, D.E.D.S., was deported to his home country and thus, could not have had contact with Mother at the time Child was conceived. The husband's presumption of paternity is, therefore, rebutted by operation of law and not at issue here. *See Vargo v. Schwartz*, 940 A.2d 459, 463 (Pa. Super. 2007) (explaining that presumption of paternity is rebutted by clear and convincing evidence that husband did not have access to wife during child's conception). We, therefore, only address Custodial Caretaker's paternity by estoppel claim, *i.e.* the claim that the trial court erred in permitting Putative Biological Father to challenge the paternity of Custodial Caretaker.

testing, the trial court sustained Putative Biological Father's objection to much of this testimony.

Putative Biological Father testified that he had a relationship with Mother around the time of Child's conception and that Mother was pregnant with Child before she ended the relationship. Although Mother previously told Putative Biological Father that he was the father, Putative Biological Father was unsure of paternity due to Mother's infidelity. Of most importance to our analysis, Putative Biological Father testified that he tried multiple times to establish a relationship with Child during the first year of Child's life while Mother was alive, but Custodial Caretaker and Mother prevented him. He testified that after Mother's death, he immediately obtained legal representation in order to assert his paternity.

On April 23, 2025, the trial court rejected Custodial Caretaker's defense of paternity by estoppel, *i.e.* that the trial court should not permit Putative Biological Father to determine his biological relationship with Child, and, thus, the trial court entered an order that permitted Putative Biological Father and Child to undergo genetic testing. The trial court based this order on its finding that Putative Biological Father had consistently attempted to establish a relationship with Child, but Mother and Custodial Caretaker had prevented him from doing so.

This timely appeal followed. Custodial Caretaker and the trial court complied with Pa.R.A.P. 1925.

Custodial Caretaker raises the following issues for our review:

1. Did the trial court abuse its discretion by holding that paternity by estoppel does not apply due to actions by [Custodial Caretaker] that caused him to have unclean hands?

2. Did the trial court abuse its discretion by finding that the actions of [Custodial Caretaker] prevented [Putative Biological Father] from asserting parentage or having a role in [C]hild's life prior to [M]other's death?

3. Did the trial court abuse [its] discretion when it refused to permit testimony of [Custodial Caretaker] regarding [C]hild's ongoing needs and his bond with [C]hild as part of a "best interests of the child" analysis required by the doctrine of paternity by estoppel?

Appellant's Br. at 9 (reordered for ease of review).

We review the trial court's order for abuse of discretion. **K.E.M. v. P.C.S.**, 38 A.3d 798, 803 (Pa. 2012). A trial court does not abuse its discretion for a mere error of judgment; rather, we will find an abuse of discretion "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill will." **Mescanti v. Mescanti**, 956 A.2d 1017, 1019 (Pa. Super. 2008) (citation omitted). Moreover, on appeal, this Court will defer "to the credibility determinations of the trial court as to witnesses who appeared before it." **Karch v. Karch**, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted). It is well-settled that "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence." **Commonwealth v. Walsh**, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted).

Custodial Caretaker's first two issues concern the trial court's decision to permit Putative Biological Father to attempt to establish his paternity to

- 4 -

Child through genetic testing. In other words, Custodial Caretaker argued that the trial court should have applied the doctrine of paternity by estoppel and not permitted Putative Biological Father to attempt to establish his paternity to Child.

The Uniform Act on Blood Tests to Determine Paternity requires courts, upon motion, to "order the mother, child and alleged father to submit to blood tests" in an action to determine paternity. 23 Pa.C.S. § 5104(c). However, this right to obtain blood testing "is not absolute and must be balanced against competing societal/family interests." *Buccieri v. Campagna*, 889 A.2d 1220, 1224 (Pa. Super. 2005) (citation and emphasis omitted). We have noted that courts should favor genetic testing because "a child's biological history may be essential to his or her future health, and the child's cultural history may be important to his or her personal well-being." *Strayer v. Ryan*, 725 A.2d 785, 788 (Pa. Super. 1999).

Our Supreme Court has applied the equitable doctrine of paternity by estoppel to bar a putative father from asserting paternity "where [the putative father had] denied his paternity, never held himself out to be father, and never took responsibility, financial or otherwise, for [the c]hild." *In re Adoption of S.A.J.*, 838 A.2d 616, 625 (Pa. 2003).

Accordingly, where a putative father has failed to establish a relationship with the child and "the principle of estoppel is operative, paternity tests may well be irrelevant, for the law will not permit a person to challenge the status which he or she has previously accepted." *Buccieri*, 889 A.2d at 1224

(citation omitted). In its evaluation of the putative father's relationship with the child and whether putative father accepted his status of not having a relationship with the child, the trial court should examine whether "the mother and her husband by their actions frustrated [the putative father's] ability to seek custody or visitation." *Id.* at 1226 (citation omitted). Where a putative father comes forward to establish his paternity and "the facts do not give rise to any countervailing presumption of paternity or to a claim of estoppel, blood testing to establish paternity should be ordered." *Strayer*, 725 A.2d at 786. In other words, where a putative father attempted to have a relationship with a child but was unsuccessful, the trial court should reject the defense of estoppel of paternity and allow the putative father to establish paternity, including by ordering genetic testing.

In this case, Custodial Caretaker challenges the trial court's decision to reject his claim that Putative Biological Father should not be permitted to establish Putative Biological Father's paternity and order genetic testing. In particular, Custodial Caretaker argues that the trial court erred because its "weighing of the evidence" was "manifestly unreasonable" and insists that "there is no evidence of record that [Custodial Caretaker] prevented [Putative Biological Father] from having in person contact with the mother." Appellant's Br. at 27-28. Custodial Caretaker further argues that "[i]t is manifestly unreasonable to suggest that [Custodial Caretaker's] preventing a stranger from interfering in his family life . . . through non-violent and minor means like blocking a phone number or social media, is wrongful conduct [that would

allow Putative Biological Father to attempt to establish paternity]." *Id.* at 28-29. He concludes that as Putative Biological Father "did not take adequate steps to assert his parental rights in a timely manner[,]" paternity by estoppel bars Putative Biological Father from now challenging Custodial Caretaker's paternity. *Id.* at 31.

The trial court found that Putative Biological Father credibly testified "that he made repeated attempts to contact and speak to Mother prior to and after the birth of the Child seeking to establish a relationship with the Child," but Custodial Caretaker "repeatedly prevented [Putative Biological Father] from establishing such [a] relationship." Trial Ct. Op. and Order, 4/23/25, at 7. The court, citing the "legal maxim that a party appealing to the equity power of a court must do so with clean hands[,]" found that Custodial Caretaker's "efforts to thwart [Putative Biological Father] in forging a parental relationship" barred Custodial Caretaker from asserting the equitable doctrine of paternity by estoppel against Putative Biological Father. *Id.* at 9-10. The court, therefore, concluded that Putative Biological Father's repeated attempts to establish a relationship with Child entitled him to genetic testing and rejected Custodial Caretaker's argument that it should apply the doctrine of estoppel in order to prevent Putative Biological Father from attempting to establish his paternity. *Id.* at 10.

Our review of the record supports the trial court's findings, and we defer to the trial court's determination that Putative Biological Father credibly testified about his efforts to contact Child. Putative Biological Father has

repeatedly attempted to establish a relationship with Child in the three years since Child's birth. **Compare Buccieri**, 889 A.2d at 1228 (finding putative biological father estopped due to his inaction for eight years of Child's life), **B.K.B. v. J.G.K.**, 954 A.2d 630, 636 (Pa. Super. 2008) (same, for nine years), **S.A.J.**, 838 A.2d at 625 (same, for twelve years). In finding that Custodial Caretaker had prevented such a relationship, the trial court also correctly concluded that Custodial Caretaker had "unclean hands" and, therefore, could not appeal to the court's equity power. The trial court, thus, did not abuse its discretion and was not manifestly unreasonable in concluding that the Putative Biological Father was entitled to genetic testing and rejecting Custodial Caretaker's claim that the doctrine of paternity by estoppel precluded it. Accordingly, Custodial Caretaker's first two issues fail to garner relief.

Custodial Caretaker next avers that the court erred in precluding his testimony regarding the details of his financial support of Mother and Child and Child's condition after the car accident. Appellant's Br. at 22-24 (citing N.T. Hr'g, 2/27/25, at 10-11, 14-16). He argues that this testimony is relevant to determine whether genetic testing would be in the best interests of the child. **Id.** at 21-25.[4] He asserts that this evidence "goes to the heart

---

[4] Custodial Caretaker also argues in this section of his brief that the trial court improperly discounted evidence that Custodial Caretaker was listed as the father on Child's birth certificate, asserting that this evidence was also relevant to the "best interest of the child" analysis. Appellant's Br. at 26-27. This issue is not clearly identified in his 1925(b) statement of matters complained of on appeal or in his brief's statement of questions involved**. See** *(Footnote Continued Next Page)*

of the determination as to whether it is likely that introducing a stranger as her father would have a detrimental [e]ffect on the Child." *Id.* at 24.

"The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." ***Wilson v. Smyers***, 284 A.3d 509, 514 (Pa. Super. 2022). "The threshold inquiry with admission of evidence is whether the evidence is relevant." ***Id.*** "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." ***Id.*** (citations omitted).

The record demonstrates that the trial court allowed some testimony pertaining to Custodial Caretaker's care for Child but cautioned Custodial Caretaker to limit the testimony, stating that:

> [This is] not a custody case . . . we've got to try to focus on the claim that's been made by your client [that] petitioner should not be allowed to get genetic testing and have paternity established because he's estopped from doing so[.] . . . [A]ll this other evidence that I'm hearing . . . doesn't help me decide [this issue.] . . . I'm going to let you go ahead here a little bit but keep it

Pa.R.A.P. 1925(b)(4)(ii) (requiring an appellant to "identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge"); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Thus, Custodial Caretaker's argument is waived. Even if not waived, this argument would not garner relief. The focus of the trial court's analysis of paternity by estoppel is on Putative Biological Father's attempts to establish a relationship with Child, not on Mother's intention of identifying Custodial Caretaker as the father of the child.

> moving because we could quickly get bogged down in a full custody trial. That's not what we're here for.

N.T. Hr'g at 15-16. The trial court found that while the parties' economic status would be relevant in a custody or support context, it was irrelevant here as the mere fact of genetic testing would not alter "where the Child will reside or who will pay for the [C]hild's needs." Trial Ct. Op. and Order at 9.

Following our review, we conclude that the trial court did not abuse its discretion in determining that this testimony was irrelevant and, thus, inadmissible. We conclude that to the extent that the doctrine of paternity by estoppel involves the best interests of the child analysis, this analysis is implicitly limited to evidence of the Putative Biological Father's actions in establishing a relationship with Child. The trial court, thus, properly focused its estoppel analysis on the actions of Putative Biological Father to establish a relationship with Child rather than the details of Custodial Caretaker's care for Child. After determining that Putative Biological Father was not estopped by his actions from asserting his paternity, the court correctly proceeded to order genetic testing. **See Strayer**, 725 A.2d at 786 ("[W]here the facts do not give rise to any countervailing presumption of paternity or to a claim of estoppel, blood testing to establish paternity should be ordered."). The trial court, therefore, properly sustained Putative Biological Father's objections to this testimony, and this claim merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/09/2025